## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

JAY LAKSHMI, INC., D/B/A EZ FOOD and KEVIN CHUDGAR, LLC, including all of their insurers, parent companies, subsidiaries, divisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the insurers, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them, and KISHANKUMAR CHUDGAR and KEVIN CHUDGAR, including their heirs, representatives, attorneys, successors, and assigns (all collectively referred to as "Defendants"), and KIMBERLY TURNER, including her heirs, representatives, attorneys, successors, and assigns, (the "Plaintiff") (Plaintiff and Defendants collectively referred to as the "Parties") for good and valuable consideration, and in order to resolve and settle finally, fully and completely all matters or disputes that now exist or may exist between them, agree as follows:

**WHEREAS**:

A. On or about June 14, 2023, Plaintiff's operative Complaint against Defendants was filed in the United States District Court, Middle District of Florida, Case No. 8:23-cv-01334-VMC-CPT ("the Civil Action").

B. In the Civil Action, Plaintiff sought monetary damages and other relief in connection with Defendant's alleged violations of the Fair Labor Standards Act ("FLSA") and 26 U.S.C. § 7434.

C. Defendants denied all allegations and set forth several affirmative defenses to the allegations claimed in the Civil Action.

D. On or about September 14, 2023, the Parties agreed to settlement in full of their dispute.

E. To avoid the further costs and burdens of litigation and to memorialize the agreement made between Plaintiff and Defendants, the Parties now desire to settle fully and finally any and all differences between them, including, but not limited to, those differences embodied in the Civil Action, with the limited exceptions of any attendant litigation to determine post-settlement fees and costs and/or enforce settlement.

**NOW, THEREFORE**, Plaintiff and Defendants agree as follows:

1. **Recitals.** The foregoing recitals constitute part of this Agreement.

2. **Mutual General Release.** The Parties, as defined above, unconditionally release and discharge each other from any and all claims, demands, liabilities, and causes of action which were, or could have been, asserted in the Civil Action, pending before the United States District Court for the Middle District of Florida. Included in the claims, demands, liabilities, and causes of action being released and discharged by Releasor are all claims under the Fair Labor Standards Act ("FLSA"); 26 U.S.C. § 7434; Title VII of the 1964 Civil Rights Act; the Civil Rights

Act of 1991; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Equal Pay Act; the Employee Retirement Income Security Act (ERISA); the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Family and Medical Leave Act of 1993; 42 U.S.C. §§ 1981, 1985(3), and 1986; the Occupational Safety and Health Act; Chapter 760, Florida Statutes; the Florida Private Whistle-blower's Act of 1991; Chapter 11A of the Miami-Dade County Code; and any and all other laws, statutes, ordinances, treaties, rules or regulations of the United States of America, or any other country, state, county, municipality, or political subdivision thereof. This release does not include any claims which may arise subsequent to the execution of this Agreement. This release does not include any claims for attorney's fees and costs; however, the Parties have separately agreed on attorney's fees and costs, which are represented in the Settlement Agreement and subject to other provisions of this Settlement Agreement on default.

The Parties agree they will not hereafter file any claim, lawsuit, or charge released herein with any agency, or join in any claim as an individual or as a member of a class in any federal, state or local court or agency in regards to the Parties (and if she has filed any of the above, she will immediately withdraw/dismiss same), but nothing herein shall be construed as any form of a bribe or other hindrance to give truthful testimony pursuant to a subpoena, lawful discovery request, or court order. The Parties recognize that no suit can be filed against the Parties for any claim released as part of this Agreement. By way of execution of this Agreement, Plaintiff swears and affirms that upon receipt of the Settlement Payments, she has been paid all wages, minimum wages, regular time, front or back pay, and overtime wages due to her and no further monies are owed to her from Defendants.

Plaintiff agrees, acknowledges, and confirms that she knows of no injuries suffered on the job for which she may have been eligible to make a claim for workers' compensation benefits and for which she has not previously submitted claims.

Plaintiff agrees, acknowledges, and confirms that she knows of no other conduct, or misconduct, on the part of the Defendants or any of its employees, which could or should have been reported to appropriate governmental agencies or otherwise.

This release specifically includes any and all claims under the Age Discrimination in Employment Act.

**PLAINTIFF UNDERSTANDS AND AGREES THAT OTHER THAN CLAIMS WHICH CANNOT BE WAIVED BY LAW, SHE IS WAIVING AND RELEASING ALL ABOVE-DESCRIBED CLAIMS AGAINST THE RELEASED DEFENDANTS TO THE DATE OF THIS AGREEMENT IN EXCHANGE FOR CONSIDERATION TO WHICH SHE IS NOT OTHERWISE ENTITLED.**

3. **Settlement Amount and Attorney's Fees.** Defendants shall pay to Plaintiff the total amount of Sixteen Thousand Dollars and Zero Cents ($16,00.00) (the "Settlement Amount"), representing unpaid overtime wages and liquidated damages.

The payments shall be delivered in the manner described below, conditioned upon the Court having entered an order approving the Settlement Agreement and dismissing with prejudice the Civil Action while reserving jurisdiction for enforcement of this Settlement Agreement.

- No later than September 30, 2023, Defendants will deliver to FairLaw Firm one (1) check payable to "Kimberly Turner" for $2,145.00, with applicable and deductions, representing unpaid overtime

- No later than September 30, 2023, Defendants will deliver to FairLaw Firm one (1) check payable to "Kimberly Turner" for $5,145.00, with no withholdings or deductions, representing liquidated damages, non-wage compensatory damages under 26 U.S.C. § 7434, and for a general release; and

- No later than September 30, 2023, Defendants will deliver to FairLaw Firm one (1) check payable to "FairLaw Firm" for $8,710.00, with no deductions or withholdings, representing separately negotiated attorney's fees and costs.

Defendants shall issue for tax purposes IRS Form W2 to Plaintiff for "Check 1" payment, and Form 1099 to Plaintiff for "Check 2" payment, and to FairLaw Firm for "Check 3" payment above. The parties are responsible for their respective tax liability properly incurred as a consequence of the payments made pursuant to this agreement. Neither Defendants nor Plaintiff make any representations as to the taxability of the amounts paid by Defendants to Plaintiff.

4. **Dismissal of Underlying Suit.** Upon execution of this Agreement, the parties shall execute and file in the Civil Action a motion to approve settlement and dismissal with prejudice conditioned on the Court retaining jurisdiction to enforce the terms of this Agreement.

5. **Settlement Payments Delivery Location.** Defendants shall timely deliver all Settlement Payments to Plaintiff's counsel's office ("Delivery Location"), currently located at FairLaw Firm, 135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146. For clarity, the payments described above must be received by Plaintiff's counsel at the Delivery Location on or before September 30, 2023. If Plaintiff's counsel's office location changes, Plaintiff will notify Defendants by emailing abe@pbl-law.com, ak@pbl-law.com, and drl@pbl-law.com with the new address for delivering the Settlement Payments.

6. **Enforcement and Default.** If Defendant does not deliver any settlement payment timely, it must deliver to the Delivery Location the untimely settlement payment within the Default Cure Period to cure the default. The Default Cure Period is five (5) business days from Plaintiff's counsel emailing Defendants at drl@pbl-law.com, abe@pbl-law.com, and ak@pbl-law.com giving notice that Defendants have failed to make a settlement payment.

If Defendants fail to cure the default within the time allotted by the Default Cure Period after written notice, Plaintiff shall be entitled to a default judgment against Defendants in the amount of Eighteen Thousand Dollars and No Cents ($18,000.00), plus attorney's fees and costs incurred to obtain and enforce the judgment, plus attorney's fees and costs incurred during post-judgment collections. If this Agreement is enforced for non-payment, the prevailing party shall be entitled to attorney's fees and costs including attorney's fees and costs incurred during post-judgment collections.

7. **No Rehire.** Plaintiff agrees and acknowledges she shall not in the future provide any services to, or be employed by, Defendants. Plaintiff further agrees and acknowledges that

each will not knowingly accept, apply for, or otherwise seek employment with, or otherwise seek to perform services for, Defendants or any of its subsidiaries, divisions, related companies, or controlling shareholders (direct or indirect) at any time. If Plaintiff is inadvertently employed by any of the foregoing (including as an independent contractor), she will promptly notify the employing person or entity of her obligation to resign from such employment, and the employing entity shall have the right to require her resignation forthwith.

8. **Non-Admission.** The parties agree the settlement proceeds are being paid as an amicable resolution of the Parties' dispute, in order to avoid the risks and costs involved in further litigation of this dispute. As such, the Defendants continue to deny any and all liability to Plaintiff and nothing in this Agreement shall be construed as an admission of any wrongdoing by the Defendants. This Agreement shall not be admissible or discoverable in any court or administrative proceeding other than as necessary in an action or proceeding for the express purpose of enforcing or construing this Agreement.

9. **Non-Disparaging Remarks**. The Parties represent and warrant that they will not disparage or encourage or induce others to disparage the other Party, including any of the releasees, by any time of communication, whether verbally, in writing, through gestures or other non-verbal means (such as winks or nods of the head), or otherwise. These proscriptions include, but are not necessarily limited to, communications that are in any way injurious to the reputation and interests of the Company or any of releasees, such as, without limitation, any negative or derogatory comments. Nor will they make any disparaging or negative comments about each other, to any person or entity. If a prospective employer requests an employment reference for Plaintiff, the Parties agree that Defendants will only provide dates of employment, positions held, and rates of pay but without reference to any claim, lawsuit, or the resolution thereof.

10. **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

11. **Severability.** Except for Sections 3, if any provision of this Agreement is declared or determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the validity of the remaining parts, terms, or provisions will not be affected thereby, and said illegal, invalid or unenforceable part, term, or provision will be deemed not to be a part of this Agreement. Sections 3 and 6 of this Agreement are material and shall not be severable nor modifiable. If the Court declines to approve Section 3 of this Agreement for any reason, the settlement is null and void and the Parties will proceed with litigation of the Civil Action unless they are able to negotiate a new settlement. The Parties agree that they are not bound by any terms in this Agreement (including monetary terms) if a new settlement must be negotiated.

12. **Notice.** Any notice, correspondence, payment, or other communication contemplated by or connected with this Agreement shall be directed as follows:

    (i)    If to the Defendants:

        Daniel R. Levine, Esq.
        Padula Bennardo Levine LLP

>   3837 NW Boca Raton Blvd., Suite 200
>   Boca Raton, Florida 33431
>   Telephone: (561) 544-8900
>   Facsimile: (561) 544-8999
>   E-Mail: drl@pbl-law.com

   (ii)   If to the Plaintiff:

>   Brian Pollock, Esq.
>   FairLaw Firm
>   135 San Lorenzo Ave., Suite 770
>   Coral Gables, FL 33146
>   Telephone: (305) 230-4822
>   Facsimile: (305) 230-4844
>   E-Mail: brian@fairlawfirm.com

**13.   Entire Agreement.** This Agreement constitutes the complete understanding of the parties hereto and supersedes any and all prior agreements, promises, representations, or inducements, whether oral or written, concerning its subject matter.

**14.   Enforcement**. In the event any action is commenced to enforce said settlement agreement, the prevailing party shall be entitled to reasonable fees and costs including fees and costs incurred during post-judgment collections. No breach of this Agreement shall be a defense for Defendants' failure to make payments pursuant to section 3 of this Agreement.

**15.   Voluntariness.** Plaintiff certifies that she has fully read, negotiated, and completely understands the provisions of this Agreement, that Defendants have advised Plaintiff to consult with an attorney before signing the Agreement, and that Plaintiff is signing freely and voluntarily, and without duress, coercion, or undue influence.

**16.   Counterparts**: This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and all of which shall constitute one single Agreement. Faxed transmissions and/or copies of the signature block shall be deemed enforceable.

**17.   ADEA/OWBPA Representations.** Notwithstanding any other provision of this Agreement to the contrary, the Parties agree as follows:

   (a)   Plaintiff, in consideration of the promises made and the payments and benefits provided by Defendants as set forth herein (which Plaintiff agrees constitutes consideration in addition to anything of value to which the Plaintiff is already entitled), agree this Agreement constitutes a knowing and voluntary waiver of all rights or claims the Plaintiff may have against the Defendant Releasees, or any of them, including, but not limited to, all rights or claims arising under the ADEA, including, but not limited to, all claims of age discrimination in employment and all claims of retaliation in violation of the ADEA.

   (b)   By entering into this Agreement, the Parties do not waive rights or claims that may arise after the date this Agreement is executed.

(c)     This Agreement does not affect the rights and responsibilities of the U.S. Equal Employment Opportunity Commission (the "EEOC") or like agencies to enforce the ADEA and other laws and will not affect or be used to interfere with Plaintiff's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or like agencies. Plaintiff further agrees she knowingly and voluntarily waives all rights or claims (that arose prior to her execution of this Agreement) she may have against the Defendant Releasees, or any of them, to receive any benefit or remedial relief (including, but not limited to, reinstatement, back pay, front pay, damages, and attorneys' fees) as a consequence of any charge filed with the EEOC or like agencies, or of any litigation concerning any facts alleged in any such charge.

(d)     This Agreement will not affect or be used to interfere with Plaintiff's protected right to test in any court of competent jurisdiction, under the Older Workers Benefit Protection Act (or like statute or regulation), the validity of the waiver of rights set forth herein.

(e)     For a period of seven (7) days following Plaintiff's execution of this Agreement, Plaintiff has the right to revoke the release of any claims arising under the ADEA set forth in this Agreement by written notice delivered within such period to the Defendants' attorneys as set forth in Paragraph 12 above.

(f)     Plaintiff further agrees and acknowledges the release of any claims arising under the ADEA set forth in this Agreement will not become effective or enforceable until the eighth (8th) day after its execution by Plaintiff, and in the event either Plaintiff revokes the release of any claims arising under the ADEA set forth in this Agreement, as set forth above, Plaintiff's release of any claims arising under the ADEA will automatically be deemed null, void, unenforceable and of no affect whatsoever. Plaintiff's revocation of the release of any claims arising under the ADEA set forth in this Agreement will not revoke and has no effect on the validity and enforceability of the remainder of this Agreement and the remainder of this Agreement shall remain in full force and effect.

(g)     Plaintiff's acceptance of the monies or other consideration paid by or on behalf of the Defendants, as described above, at any time more than seven (7) days after Plaintiff has executed this Agreement, will constitute an admission by Plaintiff she did not revoke this Agreement during the revocation period, and this Agreement has become fully effective, valid, and enforceable.

(h)     Defendants hereby advise and urge Plaintiff in writing to consult with an attorney prior to executing this Agreement.

(i)     Plaintiff represents, warrants, and acknowledges the Defendants allowed a period of twenty-one (21) days in which to consider this Agreement before executing it. If Plaintiff executes this Agreement at any time prior to the end of such twenty-one (21) day period, then such early execution was a knowing and voluntary waiver of the right to consider this Agreement for twenty-one (21) days, and was due to the belief Defendants allowed ample time in which to consider and understand this Agreement, and to review it with an attorney.

18. PLAINTIFF EXPRESSLY REPRESENTS AND WARRANTS SHE (a) HAS CAREFULLY READ THIS AGREEMENT OR HAS HAD IT READ TO HIM; (b) FULLY UNDERSTANDS THE TERMS, CONDITIONS, AND SIGNIFICANCE OF THIS AGREEMENT; (c) HAS HAD AMPLE TIME TO CONSIDER AND NEGOTIATE THIS AGREEMENT; (d) HAS HAD A FULL OPPORTUNITY TO REVIEW THIS AGREEMENT WITH HER ATTORNEYS, FAIRLAW FIRM, AND HAS DONE SO; AND (e) HAS EXECUTED THIS AGREEMENT VOLUNTARILY, KNOWINGLY, AND WITH THE ADVICE OF HER ATTORNEYS.

KIMBERLY TURNER

By: _____
KIMBERLY TURNER

Date: Sep 29, 2023

JAY LAKSHMI, INC., D/B/A EZ FOOD

By: _____
Printed Name: KISHANKUMAR CHUDGAR
Title: OWNER
Date: 09/28/2023

KEVIN CHUDGAR, LLC

By: _____
Printed Name: KISHANKUMAR CHUDGAR
Title: OWNER
Date: 09/28/2023

KISHANKUMAR CHUDGAR

By: _____
KISHANKUMAR CHUDGAR
Date: 09/28/2023

KEVIN CHUDGAR

By: _____
KEVIN CHUDGAR
Date: 09/28/2023